HERMAN A. WILKINS, Employee, Plaintiff v. J.P. STEVENS & COMPANY, Employer; LIBERTY MUTUAL INSURANCE COMPANY, Carrier, AND/OR BURLINGTON INDUSTRIES, Employer; AMERICAN MOTORISTS INSURANCE COMPANY, Carrier, Defendants

No. 16PA91

(Filed 12 March 1993)

**Master and Servant § 68 (NCI3d) — chronic obstructive pulmonary disease — cotton dust not causal — aggravating factor — claim denied**

The Industrial Commission properly denied plaintiff's claim for workers' compensation benefits where plaintiff contended that he was rendered totally disabled by chronic obstructive pulmonary disease caused by exposure to cotton dust, but the evidence showed that his exposure to cotton dust played no causal role, but probably aggravated his COPD. Plaintiff's incapacity for work caused by his COPD was not compensable because all the medical evidence tended to show that his work related exposure to cotton dust did not significantly contribute to and was not a causal factor in the development of his COPD. It must be shown that an aggravation itself was causally related to the incapacity for work for the incapacity to be compensable on the theory that conditions of the workplace aggravated a non-occupational disease. It is clear in this case that testimony referring to plaintiff's exposure to cotton dust referred to the impairment of his lungs and not the impairment of his capacity for work. To the extent plaintiff was incapacitated for work, his incapacity resulted from his non-occupational COPD standing alone.

**Am Jur 2d, Workers' Compensation §§ 328, 346.**

Justice PARKER did not participate in the consideration or decision of this case.

On plaintiff's petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 100 N.C. App. 742, 398 S.E.2d 66 (1990), affirming the Opinion and Award of the North Carolina Industrial Commission. Heard in the Supreme Court on 9 September 1991.

## WILKINS v. J.P. STEVENS & CO.

[333 N.C. 449 (1993)]

*Taft, Taft & Haigler, by Robin E. Hudson and Thomas F. Taft, for plaintiff-appellant.*

*Smith, Helms, Mulliss & Moore, by Jeri L. Whitfield and J. Donald Cowan, for defendant-appellees Burlington Industries and American Motorist Insurance Company.*

*Hunton & Williams, by Randall D. Avram, for North Carolina Citizens for Business and Industry, amicus curiae.*

*Maupin, Taylor, Ellis & Adams, P.A., by Richard M. Lewis, for North Carolina Textile Manufacturers Association, amicus curiae.*

EXUM, Chief Justice.

This is a claim for workers' compensation benefits based on plaintiff's contention that he has been rendered totally disabled by chronic obstructive pulmonary disease (COPD) caused by his long exposure to cotton dust while working for defendant Burlington Industries (Burlington).[1] The evidence before the Industrial Commission (Commission) tended to show that plaintiff's exposure to cotton dust played no causal role in the development of, but probably aggravated, his COPD. The Commission denied plaintiff's claim on the ground that his COPD was not an occupational disease and did not address specifically the aggravation evidence. The Court of Appeals affirmed.

The question before us concerns the legal significance, if any, of the aggravation evidence. We hold that on this record it has no legal significance and affirm the decision of the Court of Appeals, which reached the same conclusion.

The evidence before the Commission included plaintiff's medical records, to which all parties stipulated, various employment and cotton dust level records and reports maintained by Burlington, and the testimony of plaintiff and Dr. Herbert A. Saltzman, a specialist in pulmonary medicine and a member of the Textile Occupational Disease Panel.

Plaintiff testified regarding his work history and conditions at Burlington: He worked at Burlington's Erwin Mill in Durham

---

1. The Industrial Commission dismissed without objection plaintiff's claim against defendant J.P. Stevens.

from the 1950's until the mill closed in 1986, during which time he was exposed to varying amounts of cotton dust. Because of limited education and job skills, he is not qualified to do anything but manual labor. He cannot do manual labor because of his breathing problems. He has not, therefore, been able to work since he worked at Burlington. He was fifty-six years old at the time of the hearing before the Hearing Examiner in July 1988. He began smoking cigarettes when he was twenty-three or twenty-four years old and smoked a pack a day for about twenty-seven years.

The medical evidence tended to show as follows:

Dr. Edward Williams, plaintiff's personal physician, wrote in his medical records, "I see nothing in this man's past to indicate he has suffered from the toxic effect of cotton fiber." Dr. Saltzman testified that plaintiff's lung condition was "indistinguishable from the changes of chronic bronchitis seen in individuals who smoke cigarettes and never enter a cotton mill." He expressed the opinion, based on "the late onset of [plaintiff's] symptoms [a]nd [on] the lack of . . . the more characteristic historical features of byssinosis" in plaintiff's history, that it was "[m]ore likely than not" that plaintiff's occupational exposure to cotton dust was not a significant causative factor in the development of his chronic obstructive lung disease.

Asked to assume that plaintiff's symptoms developed ten or fifteen years ago and that plaintiff's work history was as plaintiff described it in his testimony, including extremely dusty conditions in the mill in the 50's and 60's, Dr. Saltzman opined that plaintiff's thirty-year exposure to cotton dust "probably did aggravate his chronic obstructive pulmonary disease, but on a more likely than not basis, should not be considered as a primary causative factor." On these facts the aggravation, "[m]ore likely than not," would have been permanent. Later in his testimony, Dr. Saltzman reiterated his opinion that plaintiff's exposure to cotton dust while working at Burlington "[o]n a more likely than not basis, permanently aggravated [plaintiff's] impairment."

Dr. Saltzman testified that individuals with plaintiff's documented level of impairment are not able to engage in "ordinary full time industrial employment." As for plaintiff, Dr. Saltzman said, "I think also, that an industrial type job, eight hours a day, would overtax him."

On cross-examination, Dr. Saltzman confirmed his opinion that plaintiff's cotton dust exposure may have permanently aggravated plaintiff's condition to some degree, but that it was not a significant contributing factor in the development of his chronic obstructive pulmonary disease. Dr. Saltzman again said "that exposure superimposed on [plaintiff's] chronic obstructive pulmonary disease was a significant aggravating factor . . . and produced additional permanent impairment."

When Dr. Saltzman was asked to clarify whether plaintiff's exposure to cotton dust at Burlington was "a significant contributing factor in the development of his chronic obstructive pulmonary disease," Dr. Saltzman replied:

> Your question, as posed, in the development of it, that isn't a causation of his chronic obstructive pulmonary disease. And, my answer to that is that on a more likely than not basis, no. Now the question that was put to me was, as I understood it, was[:] did that long exposure to cotton dust contribute additional impairment to a disease that was already present. The answer to that is yes.

Under the Workers' Compensation Act (the Act), an occupational disease is "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C.G.S. § 97-57(13) (1991). We set out in *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E.2d 359 (1983), the test for determining whether a workers' compensation claimant's COPD is an occupational disease under N.C.G.S. § 97-57(13) when the claimant had on-the-job exposure to cotton dust and when other non-job-related factors played causal roles in the COPD's development. We said:

> [C]hronic obstructive lung disease may be an occupational disease provided the occupation in question exposed the worker to a greater risk of contracting this disease than members of the public generally, and provided the worker's exposure to cotton dust significantly contributed to, or was a significant causal factor in, the disease's development. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors.

*Id.* at 101, 301 S.E.2d at 369-70.

**WILKINS v. J.P. STEVENS & CO.**

[333 N.C. 449 (1993)]

Since all the medical evidence tended to show that plaintiff's work-related exposure to cotton dust did not significantly contribute to and was not a significant causal factor in the development of plaintiff's COPD, the Commission correctly concluded under *Rutledge* that plaintiff did not suffer from an occupational disease; therefore, plaintiff's incapacity for work caused by his COPD was not compensable.

The question is, what is the legal effect, in the context of a workers' compensation claim based on claimant's COPD, of evidence that claimant's work-related exposure to cotton dust did not cause, but probably aggravated, the COPD so as to produce additional permanent impairment to claimant's lungs. The answer is that, standing alone, such evidence has no legal effect.

Physical impairment alone is not compensable under the Act. For any physical impairment, including that caused by an occupational disease, to be compensable under the Act, it must be shown that the impairment has caused the claimant to have an incapacity for work. N.C.G.S. §§ 97-2(9), 97-29 and 97-30 (1991). "An occupational disease does not become compensable . . . until it causes incapacity for work. This incapacity is the basic 'loss' for which the worker receives compensation . . . ." *Calder v. Waverly Mills*, 314 N.C. 70, 75, 331 S.E.2d 646, 649 (1985). Conversely, any incapacity for work for which compensation is sought must be causally related to a condition of the workplace. In occupational disease cases, this means that something in the workplace helped to bring about the disease which, in turn, caused the incapacity for work for which compensation is sought. "[T]here must be proof of a causal connection between the disease and the employment." *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981). To insure this causal relationship between conditions of the workplace and the claimant's incapacity to work in the context of a COPD claim, it must be shown factually that claimant's "occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work." *Rutledge v. Tultex Corp.*, 308 N.C. at 102, 301 S.E.2d at 370.

Plaintiff relies on this statement from *Walston v. Burlington Mills*, 304 N.C. 670, 285 S.E.2d 822, *as amended*, 305 N.C. 296, 297, 285 S.E.2d 822, 828 (1982): "Disability [i.e., incapacity for work,

*see* N.C.G.S. § 97-2(9)] caused by and resulting from a disease is compensable when, and only when, the disease is an occupational disease, or *is aggravated or accelerated by causes and conditions characteristic of and peculiar to claimant's employment.*" (Emphasis added.) The sense of the statement is that for an incapacity for work to be compensable under the Act on the theory that conditions of the workplace aggravated a non-occupational disease, it must be shown that the aggravation itself was causally related to the incapacity for work for which compensation is sought. In other words, it must be shown factually that but for workplace aggravation of the non-occupational disease there would not have been the same incapacity for work for which compensation is sought. Stated another way, if the same incapacity for work for which compensation is sought would have resulted because of the non-occupational disease itself, unaggravated by workplace conditions, there can be no compensation under the Act, even if workplace conditions, from a *medical* standpoint, aggravate the disease.

It is clear in this case that the evidence relating to aggravation rose only to the level of showing that plaintiff's non-occupational COPD was aggravated from a *medical* standpoint by his on-the-job exposure to cotton dust. When Dr. Saltzman testified that plaintiff's exposure to cotton dust aggravated his COPD, causing additional permanent impairment, it is clear that he was referring to the impairment of plaintiff's lungs and not to impairment of plaintiff's capacity for work. He testified as follows:

Q. He had the pre-existing disease? Did then his exposure, in your opinion, did then his exposure to cotton dust aggravate his pre-existing C.O.P.D. to the extent that it worsened that disease, and resulted in further damage to his lungs?

Ms. WHITFIELD: Objection.

THE COURT: Overruled.

A. I answered that question on a more likely than not basis. That it did aggravate, probably aggravated his symptoms and probably caused additional permanent impairment.

Q. To his lungs?

A. To his lungs.

Taken as a whole the evidence shows that to the extent plaintiff was incapacitated for work, his incapacity resulted from his

non-occupational COPD standing alone. There is no evidence that his exposure to cotton dust was causally related to this incapacity, even if it might have aggravated, in a *medical* sense, his COPD. Without evidence of a causal relation between the aggravation caused by the cotton dust and plaintiff's total incapacity for work for which he seeks compensation, the aggravation is not legally significant and does not entitle plaintiff to compensation. For these reasons the decision of the Court of Appeals is

AFFIRMED.

Justice Parker did not participate in the consideration or decision of this case.