The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Neill Fuleihan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On the date of the alleged occupational disease giving rise to this claim, 8 February 1993, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, the employee-employer relationship existed between plaintiff and defendant employer.
3. At such time, defendant employer was self-insured with Constitution State Services Company as third party administrator.
4. At such time, plaintiff's average weekly wage as determined by Form 22 was $281.61.
5. Medical records from Drs. William V. Stucky, Staley Jackson, Stephen J. Naso, Thomas G. Durham and James R. Boatright are received into evidence.
6. Industrial Commission Forms 19, 33, and 33R; Plaintiff's Answers to Defendant's Interrogatories; and Defendant's Answers to Plaintiff's Interrogatories are received into evidence.
7. The depositions of Drs. Naso, Boatright, and Stucky are hereby made a part of the evidentiary record.
* * * * * * * * * * *
EVIDENTIARY RULING
All objections raised in the depositions are ruled upon in accordance with the law and the opinion in this Opinion and Award.
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff was 55 years old at the time of the hearing and is right hand dominant. At the time of the hearing in this case, plaintiff had worked for defendant employer, a clothing manufacturer producing clothing items under the "Fruit of the Loom" label, for approximately 16 years. Plaintiff worked as sewer for the first nine years of her employment and for the last six to seven years as a quality control auditor. Plaintiff works eight hours per day, five to six days per week.
2. In performing her duties as quality control auditor, plaintiff would inspect up to 1500 garments per day. To do so, plaintiff would lift bundles of garments weighing approximately 15 pounds up to an inspection table, untie the bundles, inspect the garments in part by moving her right thumb and forefinger along the garment seams for those seams she was assigned to inspect on that particular occasion, retie the bundles and lift them off of the inspection table. Plaintiff, as well as all other quality control auditors, rotated weekly as to the parts of garments which they would inspect. Plaintiff's duties were repetitive in that they involved continuous use of the hands when inspecting garments but the inspection activities themselves were not constant throughout the work day and no activity which was performed in the inspection process put excessive strain or stress on the hands or wrists.
3. Plaintiff reported symptoms of hand pain to the plant nurse beginning in May of 1991, which progressively worsened to include pain, numbness and tingling sensations in both hands, wrists and upper arms by April of 1993. For these symptoms, plaintiff has been seen by the plant nurse and Drs. Durham, Robinson, Jackson, Naso, Stucky, and Boatright, and treated conservatively with medication, splints and exercises. Additionally, at Dr. Naso's recommendation, plaintiff's job as quality control auditor was modified to eliminate the requirement of tying of bundles.
4. Plaintiff has bilateral carpal tunnel syndrome and bilateral carpometacarpal arthritis of her thumbs, the left is greater than the right.
5. As a result of her condition, plaintiff was on light duty work with defendant employer from 2 September 1993 to 23 September 1993, and was out of work from 1 November 1993 to the close of the evidentiary record.
6. Plaintiff's right carpal tunnel syndrome had resolved as of June of 1994. Plaintiff's bilateral carpometacarpal arthritis of her thumbs will likely not improve in the future.
7. Due to her bilateral carpometacarpal arthritis of the thumbs, plaintiff is unable to perform work which requires opposition and grasping with her thumbs. Due to her bilateral carpal tunnel syndrome (right carpal tunnel syndrome presently resolved), plaintiff is unable to perform work which requires flexion or extension, or repetitive motion of her wrists.
8. Plaintiff is the only quality control auditor who has complained of hand and wrist problems in the last six years.
9. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant employer placed her at an increased risk of developing bilateral carpal tunnel syndrome and bilateral carpometacarpal arthritis of her thumbs as compared to members of the general public not so exposed.
10. There is insufficient evidence of record from which to determined by its greater weight that plaintiff's employment with defendant employer caused, or was a significant contributing factor in the development of, plaintiff's bilateral carpal tunnel syndrome or bilateral carpometacarpal arthritis of her thumbs.
11. Although plaintiff's employment with defendant employer aggravated to some extent her pain and symptoms associated with her bilateral carpal tunnel syndrome and bilateral carpometacarpal arthritis of her thumbs, there is insufficient evidence of record from which to determine by its greater weight that the aggravation itself is causally related to a diminution in plaintiff's wage earning capacity since 1 November 1993.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's bilateral carpal tunnel syndrome and bilateral carpometacarpal arthritis of her thumbs is not due to causes and conditions characteristic of and peculiar to her employment with defendant employer and is, therefore, not an occupational disease. Consequently, plaintiff is entitled to no compensation for occupational disease under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-52; N.C. Gen. Stat. § 97-53(13).
2. Although plaintiff's employment with defendant employer aggravated to some extent her pain and symptoms associated with her bilateral carpal tunnel syndrome and bilateral carpometacarpal arthritis of her thumbs, the aggravation itself has not resulted in a diminution of plaintiff's wage earning capacity and consequently, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-52; N.C. Gen. Stat. § 97-53(13); See Wilkins v. J. P. Stevens Co., 333 N.C. 449,426 S.E.2d 675 (1993).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law, plaintiff's claim must be, and the same is, DENIED.
2. Each side shall bear its own costs, except that defendant shall pay, if not already paid, the previously authorized expert witness fees in the amount of $240.00 to Dr. James R. Boatright, $200.00 to Dr. William V. Stucky, and $300.00 to Dr. Stephen J. Naso.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
S/ _______________________ COY M. VANCE COMMISSIONER
DCS:bjp