***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The Hartford is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $545.76.
5. The issues for determination are:
 (a) Whether plaintiff suffers from a compensable occupational disease?
(b) If so, to what benefits is plaintiff entitled?
6. The following exhibits were admitted into evidence:
(a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's medical and rehabilitation records
(c) Stipulated Exhibit 3: Industrial Commission Forms
(d) Stipulated Exhibit 4: Assembly Production Chart
 (e) Stipulated Exhibit 5: Plaintiff's Out-of-Work Notes (submitted post hearing)
 (f) Plaintiff's Exhibit 1: Letter from plaintiff's prior attorney to defendant
(g) Defendants' Exhibit 1: Employer's Report of Incident
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-eight year old woman with a twelfth grade education plus some community college credits. Plaintiff is also a certified home nursing assistant.
2. Plaintiff began working for employer-defendant in 1985. From 1993 until January 2002, plaintiff worked in the damper department assembling dampers. Since January 2002, plaintiff has worked in the warehouse counting stock.
3. Plaintiff alleges that her job in the damper department resulted in her development of a compensable occupational disease. Plaintiff's job in the damper department was comprised of four workstations and four procedures for assembling dampers.
4. The first procedure at workstation one involved putting brackets on the blades. This required the use of a rivet machine. The worker would typically be sitting and would press a pedal to place the rivet in the blade. Once the worker had a set of blades, she moved onto the second procedure.
5. The second procedure at workstation two involved a similar machine, except now the worker was placing the blades into a steel frame and using the rivet machine to rivet the blades into the frame. The worker stood at this machine and pressed the pedal.
6. The third procedure at workstation three involved tying tie rods, which are plastic canoe clips, in brackets to attach the blades to the frames. This procedure was performed while standing.
7. The fourth procedure at workstation four required the worker to box up, wrap up, or package the finished dampers. For heavier dampers, the worker would press a pedal to raise the table, thus making it easier to lift the damper. This procedure was performed from a standing position.
8. Plaintiff worked with another employee in the damper department approximately eighty-five percent of the time. During that time, plaintiff performed the first two procedures. The other fifteen percent of the time, plaintiff was required to perform all four procedures.
9. On August 3, 1996, plaintiff was working at station two when she twisted her body to pick up another steel frame and felt a pull in her left leg and hip. Plaintiff was performing her regular duties in the usual and customary manner when this occurred. In her contentions to the Commission, plaintiff did not argue that she suffered an injury by accident. Plaintiff reported the incident to her supervisor.
10. Dr. William R. Sutton, an orthopedic surgeon, was plaintiff's treating physician for her hip condition. Following an MRI, Dr. Sutton diagnosed plaintiff with degenerative arthritis of the left hip. Plaintiff received conservative treatment that failed to relieve her symptoms. Dr. Sutton recommended plaintiff undergo hip replacement surgery.
11. Dr. Sutton testified that plaintiff's work did not cause, but did aggravate, her degenerative arthritis. Dr. Sutton further testified that plaintiff's work placed her at an increased risk for such aggravation. However, Dr. Sutton offered no opinion regarding whether plaintiff's employment exposed her to a greater risk of developing degenerative arthritis than the general public.
12. The greater weight of the evidence of record demonstrates that plaintiff was not placed at an increased risk of developing degenerative arthritis as compared to the general public.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. A plaintiff seeking compensation for an occupational disease under N.C. Gen. Stat. § 97-53(13) must establish that his disease or condition meets the following three criteria: (1) the condition is "characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged"; (2) the condition is "not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation"; and (3) there is "a causal connection between the disease and the [claimant's] employment."Rutledge v. Tultex Corp., supra; Futrell v. Resinall, supra.
2. In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development. Hardin v. Motor Panels, Inc.,136 N.C. App. 351, 524 S.E.2d 368 (2000) (citing Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983)). It must be shown factually that claimant's occupational exposure was such a significant factor in the development of the occupational disease that without it the disease would not have developed to such an extent that it caused physical disability which resulted in claimant's incapacity for work. Wilkins v. J.P. Stevens Company, 333 N.C. 449, 426 S.E.2d 675 (1993).
3. In this case, the plaintiff has failed to establish that she suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). The plaintiff is not entitled to recover benefits under the Act.
4. Plaintiff has not established an injury by accident. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby, and the same shall be, denied.
2. Each side shall pay its own costs.
This the ___ day of June, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER